70 So.3d 922 (2011)
SOUTHERN INSURANCE COMPANY
v.
The METAL DEPOT and United Fire and Casualty Company.
No. 2010 CA 1899.
Court of Appeal of Louisiana, First Circuit.
June 10, 2011.
*923 W. Ransom Pipes, Dustin G. Flint, Baton Rouge, LA, for Plaintiff-Appellant Southern Insurance Company.
Carey J. Guglielmo, Stephen Dale Cronin, Baton Rouge, LA, for Defendants-Appellees The Metal Depot and United Fire and Casualty Company.
Before KUHN, PETTIGREW, and HIGGINBOTHAM, JJ.
PETTIGREW, J.
In this alleged product liability action, plaintiff-insurer appeals the trial court's judgment granting defendant-manufacturer/contractor's exception raising the objection of peremption and dismissing plaintiff's claim with prejudice. For the reasons that follow, we affirm.

FACTS
On March 1, 2001, PartyEtc.Com, Inc., of Hammond, Louisiana, contracted with Unique Systems of Albany, Louisiana, wherein an agreement was made for Unique Systems to construct a large warehouse in Tangipahoa Parish, Louisiana. Said contract was recorded in Tangipahoa Parish on March 7, 2001. Unique Systems designed and constructed the warehouse, and an Acceptance of Contract and Notice of Termination of Work was filed into the mortgage records on September 5, 2001.
On December 11, 2008, a snow storm hit Tangipahoa Parish, and snow accumulated on the roof of the warehouse constructed by Unique Systems. It was subsequently determined that the additional weight of the snow on the roof of the warehouse caused the main "I" beam to buckle and the roof to collapse.

ACTION OF THE TRIAL COURT
Southern Insurance Company ("Southern") provided insurance coverage to PartyEtc.com, *924 Inc., the owner of the warehouse. As a result of the roof collapse. Southern paid to or on behalf of its insured, PartyEtc.com, Inc., a substantial sum of money. Because the roof collapse allegedly resulted from the fabrication of the main "I" beam, Southern, on October 8, 2009, filed suit in accordance with the Louisiana Products Liability Act ("LPLA")(La. R.S. 9:2800.51, et seq.) seeking subrogation against The Metal Depot, Inc., the firm that fabricated the "I" beam, and its insurer, United Fire and Casualty Company ("United Fire"). Specifically, Southern alleged that "the warehouse building was designed, manufactured and assembled by The Metal Depot, Inc. ["Metal Depot"]."[1]
Metal Depot and United Fire (collectively referred to as "defendants") responded by filing along with its answer, peremptory exceptions raising objections of no cause of action, no right of action, and peremption. Defendants claimed that pursuant to La. R.S. 9:2772, Southern's claim was time-barred by effect of law and legally non-existent. Southern argued in response that the protections of La. R.S. 9:2772 were not applicable to defendants because (1) the failure that caused the roof collapse was a fabrication issue rather than a construction or design issue; and (2) La. R.S. 9:2772 did not protect fabricators of component parts of buildings.
Following a hearing on June 14, 2010, the trial court granted the peremptory exceptions raised by defendants without assigning reasons. From this judgment, Southern has taken a devolutive appeal.

ASSIGNMENT OF ERROR ON APPEAL
Southern contends that the trial court erred in applying the peremptive period of La. R.S. 9:2772 to Metal Depot, which was sued under the LPLA for the fabrication of a defective component part of a building.

STANDARD OF REVIEW
In connection with its appeal in this matter, Southern asks this court to conduct a de novo review of the trial court's decision to grant the peremptory exceptions raised by defendants. In support of this contention, Southern cites Bunge North America, Inc. v. Board of Commerce & Ind., 07-1746, pp. 10-11 (La.App. 1 Cir. 5/2/08), 991 So.2d 511, 519, for the proposition that in reviewing a trial court's ruling on a peremptory exception raising an objection of no cause of action, the appellate court should subject the case to de novo review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. Given the facts of this case, we disagree.
The record reflects that in addition to filing peremptory exceptions objecting to plaintiff's failure to state a cause of action, as well as a right of action, defendants also filed a peremptory exception raising the objection of peremption. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ.Code art. 3458.
*925 As noted by defendants, peremption is but a form of prescription, which is not subject to interruption or suspension. Flowers, Inc. v. Rausch, 364 So.2d 928, 931 (La.1978). See also, Bunge Corp. v. GATX Corp., 557 So.2d 1376, 1379 (La.1990). It is well-settled that "[w]hen prescription is raised by a peremptory exception, with evidence introduced at a hearing, the [trial] court's finding of fact on the issue of prescription is subject to the manifest error standard of review." Lawrence v. Our Lady of the Lake Hosp., 10-0849, p. 10 (La.App. 1 Cir. 10/29/10), 48 So.3d 1281, 1287-88. As defendants further point out, the transcript of the June 14, 2010 hearing reflects that evidence was introduced at this hearing; therefore, the applicable standard of review is manifest error.
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

DISCUSSION
In connection with its appeal in this matter, Southern urges that as a result of the collapse of the roof of its insured's warehouse on December 11, 2008, Southern paid for the damages occasioned thereby which Southern now seeks to recover. Southern has alleged in its Petition for Damages that "the warehouse building was designed, manufactured and assembled by . . . Metal Depot." Southern also alleges that Metal Depot is liable to it for "[m]anufacturing, assembling and marketing a product which was unreasonably dangerous." Southern further cites Zumo v. R.T. Vanderbilt Co., Inc., 527 So.2d 1074, 1077 (La.App. 1 Cir.1988), for the proposition that "[t]he prescriptive period applicable to product liability cases is one year from the date damages are sustained. (Citing La. Civ.Code art. 3492)." Accordingly, Southern claims that the instant suit filed on October 8, 2009, is timely.
By way of response, defendants assert that application of La. R.S. 9:2772 serves to bar Southern's claim. Louisiana Revised Statute 9:2772 provides, in pertinent part, as follows:
§ 2772. Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon
A. No action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action ... to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable. . . property . . . shall be brought against any person . . . performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property ...
(1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by the owner.
. . . .
B. (1) The causes which are perempted within the time described above include any action:

*926 (a.) For any deficiency ... in the construction of any improvement to immovable properly.
(b.) For damage to property, movable or immovable, arising out of such deficiency.
. . . .
(2) Deficiency, as used in this Section, includes failure to warn the owner of any dangerous or hazardous condition, regardless of when knowledge of the danger or hazard is obtained or should have been obtained.
(3) This peremptive period shall extend to every demand, whether brought by direct action or for contribution or indemnity or by third-party practice, and whether brought by the owner or by any other person.
Defendants submit that "[i]t is uncontested that Metal Depot was doing business as Unique Systems." Although Southern alleged in its petition that "the warehouse building was designed, manufactured and assembled by [Metal Depot]", Southern claims in its brief that it is only asserting claims against Metal Depot "in its capacity as manufacturer of the component part "I" beam." Defendants aver that such a "limitation" does not operate to bar application of La. R.S. 9:2772 to the present facts.
Defendants point out that the first paragraph of the statute states that it is applicable to any and all actions "whether ex contractu, ex delicto, or otherwise...." Relying on the "or otherwise" provision of La. R.S. 9:2772, defendants argue that this language indicates all claims are subject to the peremption statute, including claims made under the LPLA. Defendants assert that because Metal Depot "designed, manufactured, and assembled" the structure that was damaged, it is entitled to "wear two hats" and in its dual capacity as contractor and as the manufacturer of a component part, avail itself of the peremptive relief afforded by La. R.S. 9:2772. It is the position of defendants that the jurisprudence clearly supports this interpretation and the ruling of the trial court.
In its brief to this court, Southern cites and relies upon Jones v. Crane Co., 26,781, p. 6 (La.App. 2 Cir. 4/5/95), 653 So.2d 822, 826-827 and DeWoody v. Citgo Petroleum Corp., 604 So.2d 92, 99 (La.App. 3 Cir.), writs denied, 605 So.2d 1369, 1372 (La. 1992), for the proposition that a defendant which manufactures a component part of an immovable is not entitled to avail itself of the peremptive period protection established by La. R.S. 9:2772, because said manufacturers are not contractors. Defendants respond that unlike Crane Co. and Nelson (the defendant in DeWoody), Metal Depot was not merely the "manufacturer" of the component "I" beam, it was also the "contractor" of the building into which the beam was integrated. Defendants aver that there is no jurisprudential rule that prohibits a contractor that manufactures or fabricates some or all of the components integrated or installed into the construction of an immovable from availing itself of the peremptive relief afforded by La. R.S. 9:2772. We agree. The trial court was correct in maintaining the exceptions filed by defendants.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court maintaining the exceptions filed by defendants, The Metal Depot and United Fire and Casualty Company, is hereby affirmed. All costs associated with this appeal shall be assessed against plaintiff-appellant, Southern Insurance Company.
AFFIRMED.
KUHN, J., dissents with reasons.
*927 KUHN, J., dissenting.
The majority errs in broadly interpreting the peremption exception contained in La. R.S. 9:2772. It is well settled that preemptive statutes are strictly construed against peremption and in favor of upholding the claim that is alleged to be extinguished. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted. Albach v. Kennedy, 00-0636, p. 9 (La.App. 1st Cir.8/6/01), 801 So.2d 476, 482, writ denied, 01-2499 (La.10/12/01), 799 So.2d 1138.
Here, the parties do not contest that the "I" beams that were used in the construction of the warehouse were fabricated by The Metal Depot and that The Metal Depot was doing business as Unique Systems. While Unique Systems designed and constructed the building in question, The Metal Depot fabricated the steel component parts for the building. Southern has alleged and supported its position that the warehouse collapse was caused by the buckling of the main "I" beam. The Metal Depot was sued in its capacity as the manufacturer of the "I" beam. Southern has not alleged that The Metal Depot is at fault for any actions or inactions in its capacity as a contractor.
The Louisiana Products Liability Act, La. R.S. 9:2800.51 et. seq., sets forth the "exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Southern's cause of action against The Metal Depot for its alleged liability for fabricating the defective "I" beam is not perempted under the terms of La. R.S. 9:2772, because such peremption applies only to a person or entity that performs the activities specified therein. Although any claims by Southern against The Metal Depot for the "design" or "construction" of the building would be preempted, the statute does not extend this peremption to those who manufacture defective products. See Burmaster v. Gravity Drainage Dist., 366 So.2d 1381, 1386 (La.1978). La. R.S. 9:2772 does not expressly apply to manufacturers of component parts of immovable property, and the LPLA does not include a similar preemptive period. Whether an entity is protected by La. R.S. 9:2772 should depend on the nature of the action brought, i.e. whether it is an action seeking recovery for a construction/design defect in a building or an action seeking recovery for the defective manufacturing of a component part of the building. The Metal Depot should not be afforded the protection of this peremptive period based simply on the fact that it acted in the capacity of a contractor as well as a manufacturer.
NOTES
[1] Throughout this litigation, both parties have treated Unique Systems, the contractor of the warehouse, and The Metal Depot, the firm which fabricated the "I" beam used in the warehouse, as the same company, as that is what has been alleged; and that is, upon information and belief, the manner in which these entities operated. According to the representatives of the parties, The Metal Depot was doing business as Unique Systems and was not a separate legal entity.