# STATE OF LOUISIANA
## COURT OF APPEAL
### FIRST CIRCUIT

## DOCKET NUMBER
## 2021 CA 1258

## IN RE:  MEDICAL REVIEW PANEL PROCEEDINGS
## OF JANE DOE, INDIVIDUALLY,
## AND ON BEHALF OF THE MINOR, J.D.

Decision Rendered: **JUN 1 4 2022**

*\* \* \* \* \**

## ON APPEAL FROM THE
## 19th JUDICIAL DISTRICT COURT
## EAST BATON ROUGE PARISH, LOUISIANA
## DOCKET NUMBER 704,311

## HONORABLE KELLY BALFOUR, JUDGE PRESIDING

*\* \* \* \* \**

| | |
|---|---|
| Jennifer J. Greene<br>New Orleans, Louisiana | Attorney for Plaintiff-Appellant,<br>Jane Doe, individually and on<br>behalf of the minor, J.D. |
| Laura S. Gravener<br>H. Minor Pipes, III<br>Stephen L. Miles<br>New Orleans, Louisiana | Attorneys for Defendant-Appellee<br>Steven Felix, M.D. |

## BEFORE:  McDONALD, LANIER, and WOLFE, JJ.

Concurs with reasons

**McDONALD, J.**

Parents alleging a physician committed sexual battery upon their minor son during a court-ordered independent medical examination appeal a judgment granting the physician's exception of prescription and dismissing the parents' medical review panel request with prejudice. After review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After a trip to Disney World in April 2018, John and Jane Doe, Louisiana residents, filed suit in federal district court in Orlando, Florida, individually, and on behalf of their minor son, J.D., against Walt Disney Parks and Resorts U.S., Inc. and other defendants, alleging damages caused by a bed bug infestation at the resort where the family stayed.[1] The Does alleged that J.D., who has autism, had regressed due to the incident and suffered physical and mental damages. Pursuant to an uncontested defense motion, the federal district court ordered that J.D. undergo an independent medical examination by Dr. Steven Felix, a developmental and behavioral pediatrician at the Our Lady of the Lake Pediatric Development and Therapy Center in Baton Rouge. The federal court's order indicated that Dr. Felix's examination "may include inquiry into the nature and extent of [J.D.'s] claimed injuries, and assessment of the nature of [J.D.'s] condition, the need for any continuing treatment, and ongoing limitations with respect to [J.D.'s] daily living, including his educational needs." Dr. Felix examined J.D. on August 22, 2019, in the presence of Mrs. Doe.

Thereafter, on October 7, 2019, the Does filed a tort suit in the 19th Judicial District Court against Dr. Felix, Walt Disney Parks, two law firms, and other defendants, alleging Dr. Felix committed a sexual battery upon J.D, which in turn caused special and general damages to J.D., Mr. Doe, and Mrs. Doe. Dr. Felix filed an exception of prematurity based on the Does' failure to present the claims to a medical review panel before filing the lawsuit. After the trial court denied the exception, Dr. Felix filed an application for a writ of supervisory review. This court granted the writ, granted Dr. Felix's prematurity

---

[1] The parties have used pseudonyms to identify the claimants in this litigation; we do the same.

2

exception, and dismissed the Does' claims against him without prejudice. *Doe v. Walt Disney Parks & Resort, US, Inc.,* 20-0727 (La. App. 1 Cir. 10/21/20), 2020 WL 6157844.

On November 30, 2020, the Does filed a medical review panel request, alleging that, during the examination, Dr. Felix improperly examined J.D.'s genitalia without his mother's permission and without wearing gloves. In response, Dr. Felix filed an exception of prescription in the 19th Judicial District Court contending the medical review panel request was untimely, because it was filed over one year after his August 22, 2019 medical examination of J.D.[2] The Does opposed the exception. After a hearing at which Dr. Felix introduced evidence, the trial court signed a judgment on May 20, 2021, granting Dr. Felix's prescription exception, dismissing the Does' medical review panel request, and dissolving any related medical review panel.

The Does appeal the adverse judgment. They contend the medical review panel request is not prescribed, because they filed it within one year of December 20, 2019, which is the date Dr. Felix allegedly filed the exception of prematurity. According to the Does, this is the date they learned that Dr. Felix was claiming that his "intentional tort" was medical negligence covered by the Louisiana Medical Malpractice Act.

## DISCUSSION

Medical malpractice claims are subject to a one-year prescriptive period, that is, one year from the date of the act or from the date of discovery. *See* La. R.S. 9:5628. However, regardless of the date of discovery, all claims must be filed within three years of the alleged act. *Id.* Prescription begins when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he is the victim of a tort. *Request for Medical Review Panel by Wilson v. Whitfield,* 17-1723 (La. App. 1 Cir. 5/23/19), 277 So.3d 370, 375.

Ordinarily, the exceptor bears the burden of proof at the trial of the prescription exception; however, if the action is prescribed on its face, the plaintiff bears the burden of showing that the action has not prescribed. *Id.* at 375. When a prescription exception

---

[2] A health care provider, against whom a claim has been filed under the Louisiana Medical Malpractice Act, may raise any exception or defenses available under to La. R.S. 9:5628, including prescription, at any time, without need for completion of the medical review panel's review process. La. R.S. 40:1231.8B(2)(a).

3

is filed during the pendency of the medical review panel proceeding, as is the case here, the request for a medical review panel is considered the petition to be reviewed for timeliness. *Bailey v. Loewe,* 19-0915 (La. App. 1 Cir. 8/3/20), 310 So.3d 746, 748. Further, if he relies on La. R.S. 9:5628's *contra non valentem* defense, the plaintiff must prove that defense – that is, that he was unaware of the malpractice before the alleged date of discovery, and his delay in filing suit was not due to his willful, negligent, or unreasonable action. *Lawrence v. Our Lady of the Lake Hosp.,* 10-0849 (La. App. 1 Cir. 10/29/10), 48 So.3d 1281, 1285. When evidence is introduced at the hearing on a prescription exception, as is also the case here, an appellate court reviews a trial court's factual determinations, express or implied, under the manifest error standard of review. *Mitchell v. Baton Rouge Orthopedic Clinic,* 21-00061 (La. 10/10/21), 333 So.3d 368, 373; *Lawrence,* 48 So.3d at 1287-88.

At the hearing on the prescription exception, Dr. Felix introduced Mrs. Doe's medical review panel request, in which she pertinently described Dr. Felix's August 22, 2019 examination of J.D.:

> No one was in the exam room except Dr. Felix, [Mrs. Doe, and J.D. ... . After commenting multiple times on how great [J.D.'s] hair and eyes were and how [J.D.,] a five year old, was going to drive the girls crazy, Dr. Felix asked [J.D.] to get on the examination table. Dr. Felix did not ask ... permission, but told [J.D.] that he was going to listen to his heart and lungs. Dr. Felix began looking at [J.D.'s] arms for scars and then without asking ... permission, began examining [J.D.'s] stomach and mouth. Again, without ... permission, Dr. Felix told [J.D.] that he was going to look at [J.D.'s] groin area and said it was "... okay because [he] is a doctor ... ." Dr. Felix, without ... permission, removed [J.D.'s] shorts and underwear and began inspecting [J.D.'s] penis and testicles with his bare hands. (i.e., he was not wearing gloves and was touching [J.D.'s genitalia] skin-to-skin). Without any warning, Dr. [Felix] began manipulating [J.D.'s] penis and continued talking ... while leaving [J.D.'s] shorts and underwear off. Dr. Felix then began inspecting [J.D.'s] buttocks with his bare hands. ...
>
> Dr. Felix rolled [J.D.] back into the supine position, but left [J.D.'s] shorts and underwear off while inspecting [J.D.'s] legs. **[J.D.] finally requested to put his underwear and shorts on, as he was obviously uncomfortable.** Dr. Felix did the entire exam without gloves and never asked [Mrs. Doe] permission to touch her five year old son. ... **Upon seeing [J.D.'s] genitalia manipulated by the bare hand of a man who had already made inappropriate comments about [J.D.'s] appearance[, Mrs. Doe] immediately felt ill and suffered extreme emotional distress and mental anguish.** She subsequently suffered a stroke, which her doctor told her was from stress – upon information and belief, the stress and anguish of seeing her five year old son touched inappropriately. The law firms that employed Dr. Felix were *immediately* informed about the inappropriate touching. ...

4

Dr. Felix should not have removed a five year old child's shorts and underwear, manipulated his genitalia, or touched his body without his mother's permission and without wearing gloves. ... (Emphasis added.)

After review, we reiterate and agree with this court's prior conclusion that the Does' claims against Dr. Felix are claims for lack of consent and dereliction of professional skill during treatment – allegations that fall under the purview of the Medical Malpractice Act. *See Doe,* 2020 WL 6157844, at *1. Further, the medical review panel request shows that Mrs. Doe immediately knew, at the August 22, 2019 examination, that Dr. Felix's bare-handed touching of J.D's body, particularly his genitalia, was offensive to both J.D. and to Mrs. Doe. As the Does alleged, Dr. Felix's acts made J.D. "obviously uncomfortable" and made Mrs. Doe experience "immediate" and "extreme emotional distress and mental anguish." And, at that time, the Does apparently thought Dr. Felix's acts were so offensive that they immediately informed the defense lawyers in the federal suit who requested the examination of the "inappropriate touching." Because the Does specifically allege damages were immediately apparent, the prescriptive period began on the date of Dr. Felix's examination. *See Mitchell,* 333 So.3d at 381 (noting that the prescriptive period for a medical malpractice cause of action arises upon the occurrence of the injury when the damages are immediately apparent).

Notably, we reject the Does' contention that prescription only began to run when they were notified that Dr. Felix was claiming that "the intentional tort was medical negligence." The Does have pointed to no authority whereby the commencement of prescription hinges on the defendant's legal characterization of the claim against him. Even if prescription did begin on the date Dr. Felix filed his prematurity exception, there is no proof in the appellate record of when that pleading was filed. Dr. Felix's prematurity exception is not in the appellate record, and the Does did not introduce evidence at the prescription hearing proving the date the exception was filed. *See Lawrence,* 48 So.3d at 1285-86.

Accordingly, the trial court did not manifestly err in determining the Does had one year from the date of the independent medical examination, until August 22, 2020, to file

5

the medical review panel request. Because the request was not filed until November 30, 2020, the trial court correctly granted Dr. Felix's prescription exception.

## CONCLUSION

For the above reasons, we affirm the May 20, 2021 judgment, granting Dr. Steven Felix's prescription exception, dismissing John and Jane Does' medical review panel request, and dissolving any related medical review panel. We assess appeal costs to John and Jane Doe.

**AFFIRMED.**

# State of Louisiana Court of Appeal, First Circuit

## Docket No. 2021 CA 1258

### In Re: Medical Review Panel Proceedings of Jane Doe, Individually, and on Behalf of the Minor, J.D.

**Lanier, J., concurring.**

While I believe the report reaches the correct result, it is because we are constrained by the supervisory writ action taken by this court in *Doe v. Walt Disney Parks & Resort, US, Inc.*, 20-0727 (La. App. 1 Cir. 10/21/20), 2020 WL 6157844. In that ruling, the claims by the Does were dismissed without prejudice due to prematurity. The Does' original petition sounded in intentional tort, not medical malpractice. The Does alleged that the physician intentionally touched the child on his private areas without the child's consent or the parents' consent. There are no overt allegations about medical malpractice or a breach of the physician's standard of care in the original petition. Prematurity would have then not been an issue with the original petition, since it was timely filed and would not have initially required a medical review panel (MRP) to review the physician's alleged intentional tort. However, pursuant to La. R.S. 9:5628, the Does' request for a MRP was untimely.